IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION


UNITED STATES OF AMERICA EX REL. LIESA KYER,

Plaintiff,

v.                                                CIVIL ACTION NO. 2:20-cv-00732

THOMAS HEALTH SYSTEM, INC., et al.,

Defendants.


## MEMORANDUM OPINION AND ORDER

Pending before the court is a Joint Motion to Dismiss Relator's First Amended Complaint, filed by Defendants Charleston Hospital, Inc., Herbert J. Thomas Memorial Hospital Association, THS Physicians Partners, Inc., Thomas Health System, Inc., and Brian Ulery ("Defendants"), [ECF No. 56]. Relator Liesa Kyer ("Relator") responded, [ECF No. 60], and Defendants timely replied, [ECF No. 61]. For the reasons stated herein, Defendants' Motion to Dismiss is **GRANTED.**

## I.    Background

On November 9, 2020, Relator Liesa Kyer—who worked as a nurse at Thomas Memorial Hospital for several years—initiated this lawsuit on behalf of the United States of America against Defendants under the *qui tam* provisions of the False Claims Act, 31 U.S.C. §§ 3729-33 ("FCA"), for alleged violations of the FCA, the Stark Law, 42 U.S.C. § 1395nn, and the Anti-Kickback Statute, 42 U.S.C. §§ 1320a-7a(a)(7) and 1320a-7b(b) ("AKS"). [ECF No. 2, ¶¶ 1, 5]. After the United

States received several extensions of time to consider whether it would elect to intervene and take over prosecution of this case, *see* [ECF Nos. 7, 11, 14, 17, 21], the United States ultimately notified the court on July 3, 2023, that it would not be intervening at that time but reserved the right to do so at a later date, [ECF No. 22, at 2].[1] Defendants filed a Motion to Dismiss the original Complaint on January 5, 2024. [ECF No. 36]. That motion was denied as moot, [ECF No. 53], after Relator filed the operative First Amended Complaint on March 1, 2024, [ECF No. 52], within the amendment period allowed under the Scheduling Order, [ECF No. 50]. In her First Amended Complaint, Relator brings four causes of action under the FCA: (1) presentment of false claims to the United States for payment or approval, in violation of 31 U.S.C. § 3729(a)(1)(A); (2) using false statements material to the payment of false of fraudulent claims, in violation of 31 U.S.C. § 3729(a)(1)(B); (3) conspiracy between Defendants to commit a violation of the FCA, in violation of 31 U.S.C. § 3729(a)(1)(C); and (4) making, using, or causing to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay or transmit money or property to the Government, in violation of 31 U.S.C. § 3729(a)(1)(G). [ECF No. 52, ¶¶ 276–302].

Specifically, Relator alleges that starting in 2013, Thomas Health System, Inc. ("Thomas Health"), through its subsidiaries Thomas Memorial Hospital and St. Francis Hospital (together, "Thomas Health Hospitals") and THS Physician

---

[1] Page number references reflect CM/ECF page numbers.

Partners, Inc. ("THSPP"), and at the direction of Defendant Ulery, violated the Stark Law and the Anti-Kickback Statute (AKS).

Defendants filed the instant Motion to Dismiss on April 16, 2024, [ECF No. 56], arguing that the Amended Complaint should be dismissed because Relator (1) failed to file the amendment under seal pursuant to 31 U.S.C. § 3730(b)(2), and (2) failed to state a claim upon which relief may be granted under Rule 12(b)(6), in part because her FCA allegations were not pleaded with the level of particularity required by Federal Rule of Civil Procedure 9(b), [ECF No. 57, at 4]. Relator responded in opposition on May 21, 2024, [ECF No. 60], and Defendants replied on June 4, 2024. [ECF No. 61]. On September 12, 2024, I ordered the parties to file additional briefing on the impact of *Loper Bright Enterprises v. Raimondo* to this case, [ECF No. 63]. 144 S. Ct. 2244 (2024). The parties timely filed the requested briefs, [ECF Nos. 66, 67], and their responses, [ECF Nos. 69, 70]. The Government, having an opportunity to file *Loper Bright* briefing as well, did not. The matter is ripe for review.

## II.    Legal Standard

### A.  Motion to Dismiss under 12(b)(6)

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). In resolving a motion to dismiss under Rule 12, the court may not consider "matters outside the pleadings," Fed. R. Civ. P. 12(d). Specifically, the court considers only

those "documents attached or incorporated into the complaint," *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011).

Generally, a pleading under the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Farnsworth v. Loved Ones in Home Care, LLC*, No. 2:18-CV-01334, 2019 WL 956806, at *1 (S.D. W. Va. Feb. 27, 2019) (citing *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440). These factual allegations, taken as true, must "state a claim to relief that is plausible on its face." *Robertson v. Sea Pines Real Est. Cos., Inc.*, 679 F.3d 278, 288 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plausibility standard is not a probability requirement, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Although "the complaint must contain sufficient facts to state a claim that is plausible on its face, it nevertheless need only give the defendant fair notice of what the claim is and the grounds on which it rests." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th Cir. 2017). Thus, "a complaint is to be construed liberally so as to do substantial justice." *Id.*

### B. Rule 9(b) Particularity Pleading Standard

"In addition to meeting the plausibility standard of *Iqbal*, fraud claims under the [FCA] must be pleaded with particularity pursuant to Rule 9(b) of the Federal

Rules of Civil Procedure." *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (citing *Harrison*, 176 F.3d at 783–85). Rule 9(b) provides that when a party alleges fraud, that party must state the allegedly fraudulent circumstances "with particularity." Fed. R. Civ. P. 9(b). FCA plaintiffs are required to "at a minimum, describe 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (quoting *Harrison*, 176 F.3d at 784 (internal quotations omitted)). "These facts are often referred to as the 'who, what, when, where, and how' of the alleged fraud." *Id.* at 379 (quoting *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 384 (5th Cir. 2003)) (internal quotations omitted). A lack of compliance with Rule 9(b)'s particularity standard is treated in this circuit as a failure to state a claim under Fed. R. Civ. P. 12(b)(6). *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022).

The Supreme Court has cautioned that the FCA "was not designed to punish every type of fraud committed upon the government." *Harrison*, 176 F.3d at 785 (citing *United States v. McNinch*, 356 U.S. 595, 599 (1958)). Rather, "the critical question" in analyzing FCA claims is "whether the defendant caused a false claim to be presented to the government, because liability . . . attaches only to a claim actually presented to the government for payment, not to the underlying fraudulent scheme." Allegations that do not "involve an integrated scheme in which

presentment of a claim for payment was a necessary result" will be "insufficient because they are inherently speculative in nature." *Id.* at 461.

"In these Rule 9(b) cases, the particularity standard is steep." *United States ex rel. Nicholson v. Medcom Carolinas, Inc.*, 42 F.4th 185, 196 (4th Cir. 2022). While the Fourth Circuit requires "significant detail" in fraud claims, it nonetheless states that courts should "hesitate to dismiss a complaint under Rule 9(b)" if they are "satisfied '(1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts.'" *Id.* at 195 (quoting *Harrison*, 176 F.3d at 784, 789).

### C. The False Claims Act

The FCA imposes liability on "any person" who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A), (B). Under the FCA's *qui tam* provision, private persons—called relators—may file complaints of violations of the FCA on the government's behalf. *Id.* § 3730(b)(1). In general, a relator bringing an FCA claim is required to satisfy four elements: "(1) there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a 'claim')." *Harrison,* F.3d 776

at 788. "Failure to adequately allege any of these elements dooms a claim." *Taylor*, 39 F.4th at 188 (citing *Harrison*, 176 F.3d at 788).

A relator bringing a *qui tam* action for violation of the FCA must file the original complaint *in camera*, with it remaining under seal for at least sixty days while the United States decides whether to intervene and proceed with the action. 31 U.S.C. § 3730(b)(2). If the United States notifies the court and the relator that it declines to intervene, the complaint and docket are then unsealed. *Id.* § 3730(b)(4). The relator subsequently litigates the case against the defendant. *Id.* If the relator succeeds in litigating or settling the action, she is entitled to receive "an amount which the court decides is reasonable for collecting the civil penalty and damages," which "shall be not less than 25 percent and not more than 30 percent of the proceeds of the action or settlement and shall be paid out of such proceeds." *Id.* § 3730(d)(2). This includes reasonable expenses, attorneys' fees, and costs from the defendant. *Id.*

## III.  Discussion

### A.  Failure to File under Seal Pursuant to 31 U.S.C. § 3730(b)(2)

Defendants first argue that the FCA's sealing requirements apply equally to both original complaints and to amended complaints "where the amended complaint adds new claims for relief or new or substantially different allegations of fraud." [ECF No. 57, at 5 (citing *United States ex rel. Davis v. Prince*, 766 F. Supp. 2d 679, 684 (E.D. Va. 2011))]. Because Defendants claim that the Amended Complaint "contains an incredible number of new and substantially different allegations of

fraud," Defendants contend that Relator was required to file her Amended Complaint under seal, *id.*, and that her failure to do so requires this court to dismiss Relator's *qui tam* action with prejudice. *Id.* at 4 (citing *Davis*, 766 F. Supp. 2d at 682–83). I disagree.

Indeed, the sealing requirement under § 3730(b)(2) of the FCA is mandatory for *original* complaints. *See State Farm Fire & Cas. Co. v. United States ex rel. Rigsby*, 580 U.S. 26, 33 (2016) (stating that § 3730(b)(2)'s language "creates a mandatory rule the relator must follow"). Courts disagree, however, as to whether this applies equally to amended complaints, particularly ones filed after the initial seal has been lifted. *Compare Davis*, 766 F. Supp. 2d at 683–84 (holding that the term "complaint" as used in the FCA's sealing provision applies to amended complaints), *with United States ex rel. Milam v. Regents of Univ. of Cal.*, 912 F. Supp. 868, 890 (D. Md. 1995) (holding that "[n]either the [FCA] nor any relevant case law imposed upon [relator] the duty to file any amendment to [the] complaint in camera and under seal"), *and United States ex rel. Williams v. Landmark Hosp. of Athens, LLC*, 676 F. Supp. 3d 1323, 1337 (M.D. Ga. 2023) (holding that "the sealing requirements of § 3730(b)(2) do not apply to amended *qui tam* complaints when the Government has had an opportunity to consider intervention and the proposed amendment expands or explains existing claims but does not add new claims").

I adopt the view held by many courts that the issue turns on whether the filing of the amended complaint frustrates the primary purpose of the sealing

requirement: "to allay the Government's concern that a relator filing a civil complaint would alert defendants to a pending federal criminal investigation." *State Farm*, 580 U.S. at 34 (citing S. Rep. No. 99-345, at 23–24 (1986)). After a case has been unsealed, it can hardly be argued that requiring an amended complaint be filed under seal would further this purpose. This case was initially filed under seal when it originated four years ago. Since that time, the Government has had ample opportunity to review Relator's FCA claims against Defendants and determine whether to pursue its own prosecution of those claims. Defendants are aware of the Relator's claims, as well as the Government's knowledge of Relator's allegations and investigation into those allegations. There is, therefore, little risk of alerting Defendants to a pending federal criminal investigation by way of the allegations made in the Amended Complaint. For these reasons, I **FIND** that the Amended Complaint was not required to be filed under seal.

### B.  Count I: Presentment of False Claims under the FCA

Next, Defendants argue that Relator's Amended Complaint fails to plausibly and particularly allege fraud under Federal Rules of Civil Procedure 12(b)(6) and 9(b). [ECF No. 57, at 7–9]. I agree that under Rule 9(b), Count I is not pled with the required particularity.

The FCA imposes liability on anyone who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). Generally, an FCA relator must allege four elements: (1) there was a false statement or fraudulent conduct (2) with the required scienter, (3) the false

statement or fraudulent conduct was material, and (4) caused the government to forfeit or pay out money due. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 788 (4th Cir. 1999). To survive a motion to dismiss, Relator's Amended Complaint must allege Defendants' violative conduct with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure.

This complaint suffers from two fatal flaws. First, the complaint alleges that the "Defendants"—which includes four separate legal entities and one legal officer of those entities—all individually engaged in conduct violative of the FCA. Second, the complaint fails to connect any claim made to the Government to the alleged compensation scheme. Either one is sufficient to dismiss under Rule 9(b).

### 1. "Defendants" Grouping Deficiency

At a minimum, a plaintiff must "describe the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *United States ex rel. Nathan v. Takeda Pharmaceuticals North America, Inc.*, 707 F.3d at 455–56 (citing *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008)). A Rule 9(b) analysis is not cursory, rather, well-detailed complaints are required to "prevent frivolous suits, stop fraud actions where everything is learned after discovery . . ., and to protect defendants' reputations." *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 195 (4th Cir. 2022). In short, the "standard is steep." *Id.*

Relator's complaint largely alleges that Defendants, collectively and without any distinction, engaged in violative conduct. *See* [ECF No. 52]. The term "Defendants" is sometimes used to describe all the named defendants. *Id.* ¶¶ 1, 3–5, 123 n.6, 130–32, 134, 137, 147–52, 155. Other times, the term "Defendants" is used to describe the entity defendants (excluding the officer defendant Mr. Ulery). *Id.* ¶¶ 51, 81, VI., 261, 264, 276, 266. A different collection of Defendants is termed "Thomas Health Hospitals" which is used to describe the hospital entities (excluding Mr. Ulery and THSPP). *Id.* ¶¶ 69, 122, 130, 137, 148, 239–40. Still, other times "Defendants" appears to mean only THSPP and/or THSPP corporate officer Mr. Ulery. *Id.* ¶¶ 219, 221, 227, 229, 232, 234, 235, 241a.–g.. Regardless, throughout the complaint Relator uses "THSPP," "Defendants," and "Thomas Health Hospitals" in *the same paragraph. Id.* ¶¶ 100, 114, 130, 147, 148, 200 n.20, 268, 269, 257, 259.

My point is this: Relator's voluminous pleading has an identity problem. A thorough reading of the complaint leaves more questions than answers, and each question sounds like, "Who did what exactly?" The Counts at the end of the 82-page complaint lead one to believe that every Defendant engaged in specific, identifiable (but also somehow identical) conduct that leads to liability. That cannot be. Surely, Mr. Ulery's conduct and THSPP's conduct must be differentiated to give rise to liability. Further, on my reading, the "entity defendants" engaged in completely identical conduct, but the exact steps they took remain unclear.

Of course, *something* is alleged to have happened at the hands of *someone*. That general understanding, however, is not enough under Rule 9(b). Relator must

plead the "who, what, when, where, and how" of alleged fraud. *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022). The specific "who" tied to a "what" is missing from Relator's complaint and becomes more obscure as the complaint goes on.

One need only look to the complaint. In Relator's table of contents, no individual defendant is singled out, but "Defendants" generally start eight different headings and subheadings. [ECF No. 52, at 2–3] ("Defendants Paid Remuneration to THSPP and THSPP Physicians." "Defendants Submitted and Caused the Submission of False Claims."). That is reflective of the complaint's failure to walk through each defendant's conduct. Paragraph 152 uses "Defendants" to mean some smaller subset of the entities. *Id.* ¶ 152. ("Defendants paid Dr. Jogenpally well above industry standards as reflected in data reports from the Medical Group Management Association ("MGMA"), and Defendants sought to conceal this through a deferred compensation . . ."). Paragraph 164 mentions "defendants' internal documents" but does not clarify whose documents they are. *Id.* ¶¶ 164, 170, 173, 176.

The enumerated Counts in the complaint similarly gloss over the differences between Defendants. *Id.* at 80–84. I understand that Relator "realleges and incorporates by reference" the entirety of the complaint for each Count, but that kind of blunderbuss pleading obfuscates the claims. What remains in the Count sections is nothing more than legal conclusions broadly alleging "Defendants' conduct," Defendants' knowledge, and "Defendants' violations." *Id.* ¶¶ 279–82.

I agree with Defendants that Relator cannot succeed on alleging a general "group" of Defendants. [ECF No. 57, at 7]. Under Rule 9(b) an FCA Relator must identify, with particularity, "each individual's culpable conduct; defendants cannot be grouped together without specification of which defendant committed which wrong." *United States ex rel. Ahumada v. NISH*, 756 F.3d 268, 281 n.9 (citing *Arnlund v. Smith*, 210 F. Supp. 2d 755, 760 (E.D. Va. 2002)); *United States ex rel. v. Sheldon v. Forest Laboratories, LLC*, No. ELH-14-25355, 2024 WL 4544567, at *18 (D. Md. Oct. 22, 2024); *United States v. Gwinn*, No. 5:06-cv-00267, 2008 WL 867927, at *10 (S.D. W. Va. Mar. 31, 2008). Because Relator has failed to plead with particularity, her complaint must be dismissed.

## 2. Scheme-Claim Connection Deficiency

Relator also fails to establish that the alleged private scheme caused the alleged false claims submitted to the Government. My concern lies somewhere between the presentment requirement of the FCA, classic causation ideas, and the great burden defendants face in litigating FCA claims.

Classic causation and the presentment requirement go hand-in-hand. In considering presentment, "allegations of a fraudulent scheme" are not enough to survive a particularity analysis. *Nathan*, 707 F.3d at 456. Instead, "the critical question is whether the defendant *caused* a false claim to be *presented* to the government, because liability under the Act attaches only to a claim actually presented to the government for payment, not to the underlying fraudulent scheme." *Id*.

Presentment itself can be pled in two ways: (1) Relator can allege that specific false claims were actually "presented to the government for payment," or (2) Relator can allege a "pattern of conduct" that necessarily leads to the submission of false claims to the government. *Boyko*, 39 F. 4th at 196. Both require particularity. *Id.* Of course, Relator attached 32 pages of alleged claims to her complaint in Appendices A–C. [ECF No. 52]. These claims are not particular.

Each Appendix suffers from some flaw. Appendix A offers no indication of the kind of service provided in the alleged referral. *Id.* Similarly, Appendix A suggests that a single defendant, THSPP, is the billing entity for each referral, but that would fail to allege that any of the other four named defendants submitted any claim to the Government. Most of all, the complaint fails to allege (or even explain) the appendices, their meaning, or what exactly they allege. Appendix B and Appendix C suffer similar fates in a descending amount of alleged information.

Finding that the claims are not particular enough under Rule 9(b), Relator's claims only survive if the alleged scheme "necessarily" leads to the submission of false claims. *Boyko*, 39 F. 4th at 196. I also find this unsatisfied.

To be sure, Relator asserts that each and every claim is the result of an allegedly fraudulent compensation scheme, but I am not convinced that *these claims* are the *result* of the alleged scheme. More than that, I am not convinced that Relator has particularly alleged that these claims must have necessarily come from some violative scheme. *Nathan*, 707 F.3d at 457. Even under the most generous reading, Relator alleges two separate and unconnected things: (1) a compensation

plan existing between Defendants and physicians in some arrangement and (2) claims submitted to the Government. Nothing in the complaint leads me to believe, or even helps me guess, that *these claims* are necessarily false. When a complaint like this fails to "connect the dots" between "the alleged false claims and government payment," Relator fails to meet Rule 9(b)'s heightened pleading standard. *United States ex rel. Grant v. United Airlines, Inc.*, 912 F.3d 190, 199 (4th Cir. 2018).

I am not an outlier in this approach, the Fourth Circuit has maintained the strict expectations of FCA claimants. *Nathan*, 707 F.3d at 457; *Boyko*, 39 F.4th at 189; *Grant*, 912 F.3d at 199. At the motion to dismiss stage, Relator "may not merely describe a private scheme" and then "without any stated reason" allege that false "claims requesting illegal payments must have been submitted." *Grant*, 912 F.3d at 199 (citing *Nathan*, 707 F. 3d at 457). That does not mean that Relator need only allege that some claims were submitted—rather, Relator must also allege that the claims submitted to the government were (1) false claims, (2) requesting payment, (3) submitted to the government, (4) necessarily as a result of the alleged scheme.[2] That is the extent of Fourth Circuit precedent.

Some may describe this approach as unreasonably harsh, but "harshness" must be balanced by the fraud pleading standard. *United States v. McNinch*, 356 U.S. 595, 599 (1958) (The Court has cautioned that the "False Claims Act was not designed to reach every kind of fraud practiced on the Government."). Aside from

---

[2] The fourth element being the key factor in linking the alleged scheme to allegedly false claims, essentially some inkling of causation.

Rule 12(b)(6) and Rule 9(b), why must claims under the False Claims Act be analyzed at such a demanding standard? First, FCA claims operate at high stakes.[3] Lasting through time since the Civil War, the FCA has empowered private persons to sue an alleged violator and "protect the funds and property of the Government." *Polansky,* 599 U.S. at 424. Bringing the Government's damages claim, a relator may receive up to 30% of a successful recovery. *Id.* at 425. But bringing a claim is cumbersome. A relator must first file under seal, the Government must be apprised of her complaint, and then the Government is given as much time as it needs ("good cause") to decide if it will intervene. 31 U.S.C. § 3730(b). Even if it does not intervene at that point, the Government can intervene later and even move to dismiss the suit, against the relator's wishes. *Id.* § 3730(c); *Polansky*, 599 U.S. at 438. The statute on its face—and the Court's interpretation—makes clear that FCA guardrails are necessary for such high-octane litigation.

Second, FCA claims have exploded in popularity.[4] In 1987, only 31 *qui tam* cases were filed, but by 2023 more than 700 were filed in the fiscal year.[5] Money, naturally, is a motivating factor for both the government and private relators.[6]

---

[3] Constitutionally, in fact, the stakes are so high that three Supreme Court Justices have expressed doubt that the *qui tam* provision of the False Claims Act is constitutional under Article II. *United States ex rel. Polansky v. Exec. Health Resources, Inc.*, 599 U.S. 419, 442–43 (Kavanaugh, Barrett, Js., concurring and Thomas, J., dissenting).

[4] Press Release, U.S. Dep't of Justice, False Claims Act Settlements and Judgments Exceed $2.68 Billion in Fiscal Year 2023 (Feb. 22, 2024), https://www.justice.gov/opa/pr/false-claims-act-settlements-and-judgments-exceed-268-billion-fiscal-year-2023 ("*False Claims Act Press Release*").

[5] Civil Division, U.S. Dep't of Justice, Fraud Statistics Fiscal Year 2023, https://www.justice.gov/opa/media/1339306/dl?inline.

[6] Look at the False Claims Act settlements in West Virginia alone. Wheeling Hospital agreed to pay the Government $50 million to settle a Stark Law-based FCA claim. *Wheeling Hospital agrees to $50 million settlement concerning Medicare fraud claims,* MetroNews (Sept. 9, 2020), https://wvmetronews.com/2020/09/09/wheeling-hospital-agrees-on-50-million-settlement-concerning-medicare-fraud-claims/. The Pain Center of West Virginia settled with the Government for $750,000

Celebrating more than $2.68 billion worth of FCA damages recovery, the Department of Justice (DOJ) has exalted FCA claims for "rooting out fraud, ensuring that public funds are spent properly, and safeguarding critical government programs." *False Claims Act Press Release*. The 2022–23 fiscal year represented the highest number of settlements and judgments of FCA cases in history for the DOJ. *Id.* More than half, according to the Government, related to matters in the health care industry, and the total FCA recovery to date is beyond $75 billion. *Id.* Surely this popular legal mechanism for massive economic recovery must be subject to a serious, demanding standard.

My final concern, however, is the litigation burden on defendants when a relator alleges a "scheme" unconnected to claims. This concern, like my others, is rooted in Rule 9(b). *Nicholson*, 42 F.4th at 195 (Particularity is required to "prevent frivolous suits, stop fraud actions" where everything must be learned in discovery, and "to protect defendants' reputations."). The "standard is steep," and relaxing the standard in any way amplifies the burden on law-abiding defendants. *Id.* at 196.

---

to resolve Medicare fraud allegations. *Pain Center of West Virginia Settles $750,000 False Claims Act Case Over Medicare Fraud Allegations*, WVNews (Sept. 26, 2024), https://www.wvnews.com/news/wvnews/pain-center-of-west-virginia-settles-750-000-false-claims-act-case-over-medicare-fraud/article_9ebc0e78-7c10-11ef-9285-3be98de50e4d.html. Internet provider Frontier West Virginia Inc. agreed to pay nearly $18 million to the Government to settle FCA claims. Daniel Seiden, *Frontier Broadband Company Inks $18 Million Whistleblower Accord*, Bloomberg Law (May 24, 2023), https://news.bloomberglaw.com/federal-contracting/frontier-whistleblower-have-18-million-deal-to-end-fraud-suit. Weirton Medical Center settled Stark Law allegations by agreeing to pay $1.5 million to the Government. Craig Howell, *WMC to pay $1.5 million in settlement agreement with DOJ*, Weirton Daily Times (July 8, 2022), https://www.weirtondailytimes.com/news/local-news/2022/07/wmc-to-pay-1-5-million-in-settlement-agreement-with-doj/. Eye Consultants of Huntington Inc. paid nearly $1 million to the Government to settle allegations of fraudulent Medicare and Medicaid claims. *Nearly $1M health care fraud allegations settlement announced by Southern West Virginia U.S. attorney*, WVNews (Sept. 6, 2022), https://www.wvnews.com/news/wvnews/nearly-1m-health-care-fraud-allegations-settlement-announced-by-southern-west-virginia-u-s-attorney/article_60b72b14-2dff-11ed-bf7d-7f75bdaa88dd.html.

But some circuits have taken a lenient approach to False Claims Act complaints.[7] Under the lenient approach, a complaint survives if it particularly alleges a private scheme, even without representative samples of the alleged false claims. *Foglia v. Renal Ventures Management, LLC*, 754 F.3d 153, 157–58 (3d Cir. 2014) (holding that a particularly alleged "scheme to submit false claims" was enough to give the defendant "notice" as required by Rule 9(b)); *United States ex rel. Thayer v. Planned Parenthood of the Heartland*, 765 F.3d 914, 917–18 (8th Cir. 2014) (adopting the lenient approach because a relator that particularly alleges a fraudulent scheme need not always state "the contents of a bill"); *United States ex rel. Gelbman v. City of New York*, 790 Fed. Appx. 244, 248 (2d Cir. 2019) ("Of course, a *qui tam* complaint need not always allege, based on personal knowledge, the actual submission of false claims to the federal government."). According to those circuit courts, stretching Rule 9(b) to this degree achieves notice without overburdening the relator and moves the case into discovery. *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190–91 (5th Cir. 2009) (alleging a scheme that strongly infers the submission of claims "gives defendants adequate notice"); *Foglia*, 754 F. 3d at 157–58 (Although allegations of an "opportunity for fraud" are not

---

[7] Vann Bentley, Note, *Getting Particular: Finding the Appropriate False Claims Act Pleading Standard Post-Nathan v. Takeda Pharmaceuticals*, 13 Geo. J.L. & Pub. Pol'y 129, 137–41 (2015) (cataloging the First, Third, Fifth, Seventh, and Ninth Circuit's more lenient Rule 9(b) pleading standard); Michael Lockman, Comment, *In Defense of a Strict Pleading Standard for False Claims Act Whistleblowers*, 82 U. Chi. L. Rev. 1559 (2015) (arguing against the lenient approach because (1) a relaxed standard has not helped fraud enforcement, (2) information asymmetry between the defendant and relator has become less of an issue, and (3) a relator still has significant incentive to file a claim); Sara A. Smoter, Note, *Relaxing Rule 9(b): Why False Claims Act Relators Should be Held to a Flexible Pleading Standard*, 66 Case W. Res. L. Rev. 235, 246–49 (2015) (reviewing the different approaches and concluding that the "flexible" approach most appropriately fulfills the purpose of Rule 9(b)).

enough, detailed allegations of a scheme to submit false claims is sufficient "to give [the defendant] notice of the charges against it, as required by Rule 9(b).").

The standard is certainly appealing—faced with a nearly 100-page complaint, 30 pages of allegedly false claims, and allegations of a private scheme, a district court might feel comfortable denying a motion to dismiss and letting discovery slow walk into a settlement. *Grubbs*, 565 F.3d at 190–91 (holding that alleged claims are not necessary for the "ticket to federal discovery," and the district court should use its "vigilant hand" to make discovery "pointed and efficient").

I am not so comfortable. A long complaint is not always a particular complaint. *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 376–78 (holding that a third amended complaint with 400 numbered paragraphs and almost a hundred attachments "fail[ed] to link" the allegations of deceit "to any claim for payment"). Nor is a long complaint a ticket to discovery. *United States ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1313 n.24 (11th Cir. 2002) (when a plaintiff fails to plead the minimum elements of her claim but survives a motion to dismiss, she is enabled to "learn the complaint's bare essentials through discovery and may needlessly harm a defendants' goodwill and reputation").

To conclude, I recognize that the standard split is about whether a relator must allege the false claims *actually submitted* to the government, not whether the claims alleged are *sufficiently particular*. This distinction, Relator argues, is favorable to her because she did in fact attach pages of allegedly false claims. [ECF

No. 60, at 26 n.13]. The distinction, however, is illusory and does little to push the complaint into particularity. I see no difference between a relator that alleges a fraudulent scheme without any representative claims and a relator that alleges a fraudulent scheme next to—and disconnected from—a series of allegedly false claims. Both allege a fraudulent scheme, but neither "connect the dots" between the scheme and claims submitted to the Government. *Grant*, 912 F.3d at 199. Neither satisfy Rule 9(b).

For these reasons, Defendants' Motion to Dismiss, [ECF No. 56], is **GRANTED** as it relates to Count One.

### C. Count II: Using False Statements Material to False Claims Paid Under the FCA

In Count Two, Relator alleges that Defendants made false statements in connection with the false claims for payment that they made to the United States. [ECF No. 52, ¶ 284]. The FCA prohibits any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B). This has been called a "false-record-or-statement" claim. *Harrison*, 176 F.3d at 788. Count Two does not require "presentment" of the claim to the government, as opposed to the claim in Count One. In this circuit, however, both claims require the same four elements. *Nicholson*, 42 F.4th at 193 ("Both a presentment claim and a false-record-or-statement claim under the False Claims Act require four elements.").

Because I found that Relator failed to particularly allege Count One, I similarly find that the fraud of Count Two has not been particularly pled. Therefore, Defendants' motion to dismiss as to Count Two is **GRANTED**.

### D.  Count III: Conspiracy Under the FCA

The particularity flaws of Relator's complaint similarly doom Count Three, but Relator also failed to plausibly allege this count under Rule 12(b)(6). In Count Three, Relator alleges that Defendants conspired with each other to violate the FCA. [ECF No. 52, ¶ 291]. The FCA prohibits any person who "conspires to commit a violation" of other FCA provisions, including the two from the previous counts. 31 U.S.C. § 3729(a)(1)(C). To state a claim for conspiracy to violate the FCA,  a plaintiff must show that the conspirators intended "to defraud the Government." *Allison Engine Co., Inc. v. United States ex rel. Sanders*, 552 U.S. 662, 672 (2008); *Nicholson*, 42 F.4th at 193.[8]

Here, under Rule 12(b)(6), is where Relator's claim fails. While Relator alleges that Defendants knew that their conduct would violate the FCA, Relator does not allege that Defendants had a "meeting of the minds" in which they "intended to defraud the government." *United States ex rel. Godfrey v. KBR, Inc.*, 360 Fed. Appx. 407, 413 (4th Cir. 2010). Relator provides no factual allegations to support a finding that Defendants were engaged in a conspiracy and instead only states such as a legal conclusion. [ECF No. 52, ¶¶ 291, 294]. Legal conclusions are

---

[8] I note that this is a higher standard than the mental state required under the FCA provisions of Counts One and Two.

not entitled to the same presumption of truth as plausible factual allegations. *Twombly*, 550 U.S. at 555.

Therein lies the problem; FCA conspiracy requires allegations of a "meeting of the minds" with an intent "to defraud the Government." *Godfrey*, 260 Fed. Appx. at 413; *Allison Engine Co., Inc.*, 552 U.S. at 672. At best, Relator alleges that Defendants all engaged in simultaneous conduct. Relator, however, has not alleged with sufficient plausibility or particularity that a meeting of the minds occurred wherein Defendants agreed on their intent to defraud the Government. Thus, Relator's Count Three must be dismissed. Therefore, Defendants' Motion to Dismiss is **GRANTED** as to Count III.

### E.  Count IV: Obligation to Pay Money to the Government Under the FCA

Like the other counts, Count Four cannot survive motion to dismiss under the particularity standard, however, Relator also failed to plausibly allege this count under Rule 12(b)(6). In Count Four, Relator alleges that Defendants improperly avoided or decreased their obligation to pay money to the government. The FCA makes liable any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). This is known as the "reverse false claim" provision of the FCA which covers persons or entities who avoid their obligation to pay the Government through the submission or

concealment of a false claim. *Miller v. United States ex rel. Miller*, 110 F.4th 533, 542 (2d Cir. 2024); *Pencheng Si v. Laogai Rsch. Found.*, 71 F. Supp. 3d 73, 88 (D.D.C. 2014); *United States v. Walgreen Co.,* 711 F. Supp. 3d 601, 612–13 (W.D. Va. 2024). Obligation is defined as "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment." 31 U.S.C. § 3729(b)(3).

Count Four fails on 12(b)(6) analysis. It appears that Relator's complaint alleges that Defendants—by submitting allegedly false claims to the Government—avoided repayment to the Government of overpaid funds. Essentially, Relator alleges that violation of FCA provisions 3729(a)(1)(A) and (a)(1)(B) (Counts I and II) automatically constitutes a violation of FCA provision 3729(a)(1)(G) (Count IV). The FCA does not contain a two-for-one deal.

Without more, the reverse false claims would be redundant to the preceding false claims. *United States ex rel. Harbit v. Consultants in Gastroenterology, P.A.*, No. 3:19-cv-03403-JMC, 2021 WL 1197124, at *8 (D.S.C. Mar. 30, 2021) (When a relator alleges that a defendant overcharged the Government and failed to repay, "courts have consistently dismissed the [reverse FCA] claim as redundant.") (quoting *United States ex rel. Integra Med Analytics LLC v. Providence Health & Servs.,* No. CV 17-1694 PSG (SSx), 2019 WL 3282619, at *22 (C.D. Cal. July 16, 2019) (reversed on other grounds)). Relator's allegations for the reverse false claim count rests completely on the identical facts that allegedly support Counts One and

Two; however, a traditional false claim action cannot simultaneously give rise to a reverse false claim action. *United States v. Lab'y Corp. of Am. Holdings*, No. 9:14-cv-3699-RMG, 2019 WL 236799, at *3 (D.S.C. Jan. 16, 2019) ("it is well settled that 'reverse false claims may not be based on the same conduct as a plaintiff's claims'") (quoting *United States ex rel. Branscome v. Blue Ridge Home Health Servs., Inc.*, No. 7:16CV00087, 2018 WL 1309734, at *5 (W.D. Va. Mar. 13, 2018)). To accept Relator's Count Four as well-plead would be to merge FCA provisions (A), (B), and (G) such that "there would be nothing 'reverse' about" a reverse false claim. *Pencheng Si,* 71 F. Supp. 3d. at 97.

This is not to say that provision (G) has no utility; however, in this case, Relator cannot take advantage of it. Under the statute, Relator must plausibly and particularly allege that Defendants (1) knowingly submitted a false statement or record to the Government in connection to (2) a specific obligation Defendants had to pay/repay the Government. The second element is not plausibly alleged.

In fact, the second element is barely mentioned at all. The word "obligation" only appears in Relator's First Amended Complaint when she recites the basic requirements under the FCA. [ECF No. 52, ¶¶ 4, 16, 250, 293, 295, 298–300]. Defendants' specific obligation to repay the government is neither alleged nor explained. A 60-day window to repay the Government for overpaid claims is alleged exactly once, in Paragraph 301, but it is nothing more than part of a legal conclusion. *Twombly*, 550 U.S. at 555 (To survive a motion to dismiss, a complaint "requires more than labels and conclusions."). Relator offers no specific allegations

of any obligation that Defendants owed the Government. Thus, Relator's Count Four must be dismissed under Rule 12(b)(6). *United States v. Carranza*, No. 1:22-cv-189 (AJT/IDD), 2022 WL 3226191, at *7 (E.D. Va. July 1, 2022) (dismissing a reverse false claim action because the relator failed to "allege any obligation owed by Defendants to the government" and "only alleg[ed] the formulaic recitation of the elements of the claim"). For these reasons, Defendants' Motion to Dismiss is **GRANTED** as it relates to Count IV.

## IV.    Conclusion

Allegations of fraud precede serious and often disastrous consequences. That is why fraud must be pled with particularity, describing the alleged conduct with sufficient detail. Of course, a plaintiff need not prove her case at the pleading stage. But I cannot, and I will not, drag a defendant into discovery when a complaint fails to allege the details of fraud—causally linked together—to form a plausible and particular claim. Relator's complaint does not meet this bar, and Defendants should not be subject to further litigation under the shadow of a haphazardly pled 82-page complaint.

For the foregoing reasons, Defendants' Motion to Dismiss, [ECF No. 56], is **GRANTED.** The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record, including that of the United States, and any unrepresented party. The court further DIRECTS the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

ENTER:    November 7, 2024

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

25